UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| KENNETH NEESE,<br><br>                    Plaintiff,<br><br>v.<br><br>OWNERS INSURANCE COMPANY, a Michigan corporation,<br><br>                    Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [ECF NO. 46] PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING [ECF NO. 80] PLAINTIFF'S MOTION FOR ADDITIONAL TIME TO CONDUCT DISCOVERY, AND GRANTING IN PART AND DENYING IN PART [ECF NO. 69] DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 1:24-cv-00045-DBB-DBP<br><br>District Judge David Barlow |

Before the court is Plaintiff Kenneth Neese's Motion for Partial Summary Judgment,[1] Defendant Owners Insurance Company's Motion for Partial Summary Judgment,[2] and Mr. Neese's Rule 56(d) Motion for Additional Time to Conduct Discovery,[3] as well as the responsive briefing for each motion.[4] Mr. Neese carried underinsured motorist ("UIM")

---

[1] Pl.'s Mot. for Partial Summ. J. ("Pl.'s MSJ"), ECF No. 48, filed July 23, 2025. The court will cite to the unredacted, sealed version of the motion throughout this order. The redacted, unsealed version is filed at ECF No. 46.

[2] Def.'s Mot for Partial Summ. J. ("Def.'s MSJ"), ECF No. 71, filed October 15, 2025. The redacted, unsealed version is filed at ECF No. 69.

[3] Mot. for Additional Time to Conduct Discovery ("Pl.'s 56(d) Mot."), ECF No. 80, filed December 9, 2025.

[4] Def.'s Mem. in Opp'n to Mot. for Partial Summ. J. ("Def.'s Opp. to Pl.'s MSJ"), ECF No. 54, filed August 20, 2025. The redacted, unsealed version is filed at ECF No. 52; Reply Supp. Mot. for Partial Summ. J. ("Pl.'s Reply in Supp. of MSJ"), ECF No. 58, filed September 2, 2025. The redacted, unsealed version is filed at ECF No. 56; Resp. to Def.'s Mot. for Partial Summ. J. ("Pl.'s Opp. to Def.'s MSJ"), ECF No. 83, filed December 9, 2025. The redacted, unsealed version is filed at ECF No. 81; Def.'s Reply Memo. Supp. Mot. for Partial Summ. J. ("Def.'s Reply in Supp. of MSJ"), ECF No. 103, filed January 9, 2026; Def.'s Opp. to Pl.'s Mot. for Additional Time ("Def.'s Opp. to Pl.'s 56(d) Mot."), ECF No. 102, filed January 9, 2026.

insurance coverage with Owners Insurance Company when he was involved in an automobile accident. At issue here, Mr. Neese seeks summary judgment that Owners breached the implied covenant of good faith and fair dealing in their insurance contract by failing to diligently investigate his claim. Owners seeks summary judgment that it did not breach the implied covenant. Having reviewed the briefing and the case law, the court determines that oral argument is not necessary.[5]

## BACKGROUND

Mr. Neese was involved in a two-vehicle automobile accident in July 2021.[6] After settling with the other driver's insurance carrier,[7] Mr. Neese sent Owners a demand for payment of the full amount of his UIM coverage on January 16, 2024.[8] The demand for $1,000,000 included around 2,000 pages of supporting documents, including medical records, billing records, and medical expert reports.[9] The demand letter required a response by February 16, 2024 or Mr. Neese threatened legal action.[10]

Sometime in the week after receiving the demand latter, Owners created a "UIM Litigation plan" in Mr. Neese's file.[11] This plan included multiple proposed next steps.[12] One of the proposed next steps was to "[r]equest a reasonable extension of time, perhaps an additional

---

[5] *See* DUCivR 7-1(g).
[6] Pl.'s MSJ 2; Def.'s Opp. to Pl.'s MSJ 7.
[7] Pl.'s MSJ Ex. LL.
[8] Pl.'s MSJ Ex. L; Pl.'s MSJ 13 ¶ 3; Def.'s Opp. to Pl.'s MSJ 2.
[9] Pl.'s MSJ Ex. L; Def.'s Opp. to Pl.'s MSJ Ex. 46 (stating that the demand letter included "1,695 pages of medical records, and 102 pages of medical billing information, along with a 179 page life care plan.").
[10] Pl.'s MSJ Ex. L, DEF000044.
[11] Pl.'s MSJ Ex. P, HO 003980; Def.'s Opp. to Pl.'s MSJ Ex. 10, HO 003980. Mr. Neese's counsel assert in their briefing that the plan was saved to Mr. Neese's file on January 18, 2025, but Owners asserts it was saved on January 25, 2025. Pl.'s MSJ 13 ¶ 5; Def.'s Opp. to Pl.'s MSJ 2. Neither party cited exhibits that clarify what date the plan was saved, but the analysis stays the same regardless of the exact date.
[12] *Id.*

30 to 60 days, in which to gather and review Mr. Neese's medical history[.]"[13] Another step was to "[o]btain complete information on the numerous 'hits'" from an Insurance Services Group ("ISO") report showing multiple previous insurance claims with a connection to Mr. Neese.[14]

Owners responded to the demand letter two days after receiving it, on January 18, 2024.[15] Owners requested additional information before processing the claim, including information required under Utah Code § 31A-22-305.3 (the "UIM statute").[16] A week later, on January 24, 2024, Mr. Neese responded that he believed he already provided all the information necessary for Owners to investigate the claim, and that the requirements under the UIM statute did not yet apply because Mr. Neese had not yet filed suit.[17] A week later, on January 31, 2024, Owners responded, clarifying what additional information Owners needed to investigate the claim.[18] Mr. Neese responded two weeks later, on February 14, 2024, with additional documents, including a statement mirroring that required under the UIM statute and a signed authorization for release of health information.[19] That said, Mr. Neese maintained his position that these forms were unnecessary to fairly investigate the claim given the extensive documentation Mr. Neese already provided.[20] A few days later, on February 19, 2024, Owners responded, requesting a couple of corrections to the authorization forms provided but otherwise accepting that Mr. Neese provided the information and documentation necessary at that point.[21]

---

[13] *Id.*
[14] *Id.*; Pl.'s MSJ Ex. Q.
[15] Def.'s Opp. to Pl.'s MSJ Ex. 9.
[16] *Id.*
[17] Def.'s Opp. to Pl.'s MSJ Ex. 46.
[18] Def.'s Opp. to Pl.'s MSJ Ex. 6.
[19] Def.'s Opp. to Pl.'s MSJ Ex. 11.
[20] *Id.*
[21] Def.'s Opp. to Pl.'s MSJ Ex. 47.

Mr. Neese filed his complaint that same day, February 19, 2024.[22] Mr. Neese then served the disclosures required under the UIM statute on March 19, 2024, referencing the documents previously provided to Owners in the initial demand letter and the February 14 letter.[23]

On March 28, 2024, Owners sent the authorizations for release of health information to Mr. Neese's various disclosed providers.[24] After then discovering from the providers' responses that the form listed Mr. Neese's birth date incorrectly, Owners requested corrected forms from Mr. Neese on May 20, 2024.[25]

On April 10, 2024, the court entered a stipulated scheduling order.[26] The scheduling order has been amended several times, with stipulation from both parties, such that the current deadline for fact discovery is March 18, 2026.[27]

On ether April 17 or 18, 2024, Owners sent a letter to Mr. Neese to serve as its written response as required under the UIM statute.[28] The letter stated that "Owners Insurance has determined that no amount of UIM benefits under [Mr. Neese's] policy is indisputably owed at this time."[29] It further stated that "Owners Insurance's investigation, evaluation, and adjustment efforts on this claim are still ongoing. Should [Owners] determine in the future that certain sums

---

[22] Notice of Removal Ex. 2, Summons and Complaint, ECF No. 2-2, filed March 13, 2024.
[23] Pl.'s MSJ Ex. S; Def.'s Opp. to Pl.'s MSJ Ex. 13. Mr. Neese, in his briefing, asserts that the disclosure was served on February 19, 2024, but the exhibit he cites to was dated March 19, 2024. *Compare* Pl.'s MSJ 14 ¶ 8 *with* Pl.'s MSJ Ex. S.
[24] Pl.'s MSJ Ex. T.
[25] Pl.'s MSJ Ex. U; Def.'s Opp. to Pl.'s MSJ Ex. 32.
[26] Scheduling Order, ECF No. 14, filed April 10, 2024.
[27] Fourth Am. Scheduling Order, ECF No. 79, filed November 20, 2025; *see also* Third Am. Scheduling Order, ECF No. 51, filed August 7, 2025; Second Am. Scheduling Order, ECF No. 45, filed May 21, 2025; Am. Scheduling Order, ECF No. 39, filed February 28, 2025; Scheduling Order, ECF No. 26, filed December 3, 2024.
[28] Pl.'s MSJ Ex. KK; Def.'s Opp. to Pl.'s MSJ Ex. 14.
[29] *Id.* at 1.

are indisputably owed, those monies will be advanced to your client."[30] The letter specifically identified the following issues with Mr. Neese's claim that required additional time and investigation:

- The degree and nature of possible pre-existing upper extremity conditions, including diagnosed carpal tunnel syndrome, in his upper extremities;

- The degree and nature of possible pre-existing lumbar spine conditions, including diagnosed and surgically addressed right L5-S1 issues;

- Prior and subsequent traumatic events involving Mr. Neese, including worker's compensation incidents and claims, as well as other incidents/accidents, that may have resulted in additional injury/pain to Mr. Neese;

- Apparent delayed onset or reporting of medical issues/conditions Mr. Neese now claims to have been caused by the accident;

- Apparent missing pertinent records and additional providers who have not yet been provided, identified, or for which additional clarification is needed; and

- Indications of prior treatment/care for some of the medical conditions claimed by Mr. Neese to have been caused by this accident.[31]

On October 1, 2024, Owners served its first set of discovery requests.[32] The request included questions related to Mr. Neese's medical history and records.[33]

On either November 4, 2024, or December 4, 2024, Owners served its First Notice of Intent to Serve Subpoenas.[34] This notice included subpoenas to Mr. Neese's medical providers and health insurance.[35] On December 6, 2024, Mr. Neese requested Owners to limit the scope of

---

[30] *Id.*
[31] Def.'s Opp. to Pl.'s MSJ Ex. 14 at 2–3.
[32] Pl.'s MSJ Ex. W.
[33] *Id.*
[34] The exhibit provided states that the Notice of Intent to Serve Subpoena Duces Tecum was served on November 4, 2024, but both parties in their briefing state that the notice was served on December 4, 2024. *Compare* PL.'S MSJ Ex. Y *with* Pl.'s MSJ 7 *and* Def.'s Opp. to Pl.'s MSJ 4; *see also* Def.'s Opp. to Pl.'s MSJ Ex. 2. Either way, the analysis does not change.
[35] Pl.'s MSJ Ex. Y.

the subpoenas.[36] On or around January 20, 2025, Mr. Neese and Owners agreed on the scope of the proposed subpoenas.[37] On March 5, 2025, Owners sent Mr. Neese the revised subpoenas for approval.[38]

On May 16, 2025, Owners' assigned adjuster for the claim testified that she had not yet received all the relevant medical records.[39]

On May 28, 2025, Owners served its Fourth Notice of Intent to Serve Subpoenas.[40] The notice included subpoenas seeking information from the tortfeasor's insurance carrier about the accident underlying this suit and seeking information from another insurance carrier regarding previous claims made by Mr. Neese.[41]

On June 13, 2025, Owners served its Third Set of Interrogatories, requesting Mr. Neese to identify the pharmacies he used in the last 10 years.[42]

On June 20, 2025, Owners served its Sixth Notice of Intent to Serve Subpoenas.[43] This notice included subpoenas to two additional insurance carriers, requesting information on accidents for five different dates.[44] Four of the five accidents were identified in the ISO claim report Owners had access to in January 2024.[45]

---

[36] Pl.'s MSJ Ex. Z.
[37] Pl.'s MSJ Ex. AA; *See also* Def.'s Opp. to Pl.'s MSJ Ex. 2.
[38] Pl.'s MSJ Ex. BB.
[39] Pl.'s MSJ Ex. N, 58:10–14, 84:23–25.
[40] Pl.'s MSJ Ex. CC.
[41] *Id.*
[42] Pl.'s MSJ Ex. DD.
[43] Pl.'s MSJ Ex. EE.
[44] *Id.*
[45] Pl.'s MSJ Ex. Q, HO 004235–004236, HO 004241–004242, HO 004247–004251, HO 004271–004272.

On June 25, 2025, Owners served its Fifth Notice of Intent to Serve Subpoenas.[46] This notice included a subpoena to one of Mr. Neese's medical providers that Mr. Neese identified in his initial disclosures over a year earlier.[47]

On July 11, 2025, Owners requested Mr. Neese sign an authorization allowing Owners to obtain Mr. Neese's worker compensation claim files.[48]

On November 19, 2025, Owners formally denied Mr. Neese's claim, stating in a letter to Mr. Neese: "Owners maintain that at a minimum that Mr. Neese's claim is reasonably debatable and that no amount greater than the $100,000 plus PIP payments he previously received is all that is owed for his injuries and damages."[49] This denial occurred after briefing on Mr. Neese's summary-judgment motion was completed and Owners filed its partial summary judgment motion, but before Mr. Neese's response to Owners' motion and Mr. Neese's Rule 56(d) motion.

## STANDARD

"A party is entitled to summary judgment if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[50] "A factual issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[51] "The nonmoving party is entitled to all reasonable inferences from the record . . . ."[52]

---

[46] Pl.'s MSJ Ex. FF.
[47] *Id.*
[48] Pl.'s MSJ Ex. HH.
[49] Pl.'s Opp. to Def.'s MSJ Ex. W, X.
[50] *Affliction Holdings, LLC v. Utah Vap or Smoke, LLC*, 935 F.3d 1112, 1114 (10th Cir. 2019) (citing *Hobbs ex rel. Hobbs v. Zenderman*, 579 F.3d 1171, 1179 (10th Cir. 2009)).
[51] *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2014) (quoting *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002)).
[52] *Id.* at 1143–44.

## DISCUSSION

Mr. Neese claims that Owners violated the implied covenant of good faith and fair dealing in its insurance contract. "Under Utah law, 'an implied covenant of good faith and fair dealing generally inheres [in] all contractual relationships.'"[53] "Under this covenant, the contracting parties each impliedly promise not to 'intentionally or purposely do anything [that] will destroy or injure the other party's right to receive the fruits of the contract' . . . ."[54] "[T]o comply [with the covenant], a party must act consistently 'with the agreed common purpose and the justified expectations of the other party . . . .'"[55] "Whether there has been a breach of good faith and fair dealing is a factual issue, generally inappropriate for decision as a matter of law."[56]

In a first-party insurance contract, "the overriding requirement imposed by the implied covenant is that insurers act reasonably, as an objective matter, in dealing with their insureds."[57] This requires, "at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim."[58] "But when an insured's claim is fairly debatable, the insurer is entitled to debate it and cannot be held to have breached the implied covenant [of good faith] if it chooses to do so."[59]

---

[53] *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 27, 56 P.3d 524 (quoting *Rawson v. Conover,* 2001 UT 24, ¶ 44, 20 P.3d 876).
[54] *Id.* (quoting *Brown v. Moore,* 973 P.2d 950, 954 (Utah 1998)).
[55] *Rawson*, 2001 UT 24, ¶ 44 (quoting *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991)).
[56] *Blakely v. USAA Cas. Ins. Co.*, 500 Fed. Appx. 734, 739 (10th Cir. 2012) (quoting *Oman v. Davis Sch. Dist.*, 194 P.3d 956, 968 (Utah 2008)).
[57] *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 465 (Utah 1996).
[58] *Jones v. Farmers Ins. Exch.*, 2012 UT 52, ¶ 7, 286 P.3d 301 (quoting *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985)).
[59] *Id.* (quoting *Billings*, 918 P.2d at 465).

8

Here, Mr. Neese asserts that Owners failed to diligently investigate the facts or promptly decide the claim as required by the implied covenant of good faith and fair dealing. Mr. Neese argues that he filed the claim over 500 days ago, yet Owners still has not finished collecting his medical records and waited over a year to begin investigating his past insurance claims. Mr. Neese argues this delay occurred despite Owners having identified both sets of records as critical to its investigation in the UIM litigation plan more than a year earlier. In response to Owners' motion for partial summary judgment, Mr. Neese asserts summary judgment for Owners would be premature because he has not had the opportunity to conduct discovery into Owners' recent denial.

On the other hand, Owners argues that the relevant timeline is from the initial UIM demand to Owners until the filing of this litigation. Thus, Owners asserts that Mr. Neese's citations to events occurring after this litigation began are erroneous. But regardless of the relevant timeline, Owners also asserts that it acted diligently, reasonably, and promptly. Owners argues that many of the delays Mr. Neese asserts are due in part to Mr. Neese's actions, and that after litigation began Owners acted within the discovery timeline agreed to by the parties and ordered by the court.

In short, the parties present three issues: First, as a matter of law, should the court consider post-litigation activity? Second, if the court should consider post-litigation activity, has Mr. Neese had sufficient time to conduct discovery into Owners' denial of his claims? And third, could a reasonable jury find that Owners has been diligent and prompt in its investigation? The court considers each issue in turn.

## I.    Post-Litigation Activity

Mr. Neese argues that Owners has not diligently investigated Mr. Neese's claim, including during discovery in this case. But Owners responds that actions after the start of litigation are irrelevant to whether Owners violated the implied covenant of good faith and fair dealing. Owners asserts that "the relevant time period for evaluating a bad faith claim is when a plaintiff first makes a UIM claim and what an insurance company knew or should have known when evaluating the claim at that time and prior to the filing of suit."[60]

But nothing in Utah law suggests that the insurer's requirement to act reasonably under the insurance contract ends if a lawsuit is filed.[61] In fact, Utah law suggests the opposite—insurers must act reasonably until they deny or otherwise conclude the claim, including during litigation.

For starters, the case law focuses on the time up until the claim was denied or otherwise determined: "the insurer will diligently investigate the facts to enable it to *determine* whether a claim is valid . . . and will thereafter act promptly and reasonably *in rejecting or settling the claim*."[62] "If an insurer acts reasonably in *denying* a claim, then the insurer did not contravene the covenant . . . ."[63] "The *denial* of a claim is reasonable if the insured's claim is fairly debatable. . . . [I]f an insurer *denies* an insured's claim [that] is fairly debatable, [then] the insurer is entitled to debate it and cannot be held to have breached the implied covenant if it chooses to

---

[60] Def.'s Opp. to Pl.'s MSJ 19; Def.'s MSJ 15 (stating the exact same assertion word for word).

[61] *See Billings*, 918 P.2d at 465 (Utah 1996) ("[T]he overriding requirement imposed by the implied covenant is that insurers act reasonably, as an objective matter, in dealing with their insureds.").

[62] *Jones*, 2012 UT 52, ¶ 7 (quoting *Beck*, 701 P.2d at 801) (emphasis added); *see also Prince*, 56 P.3d at 533; *Lieber v. ITT Hartford Ins. Ctr., Inc.,* 15 P.3d 1030, 1037 (Utah 2000); *Gibbs M. Smith, Inc. v. United States Fid. & Guar. Co.,* 949 P.2d 337, 344 (Utah 1997).

[63] *Prince*, 56 P.3d at 533.

10

do so."[64] If insurers must act reasonably in denying a claim, regardless of whether that denial comes before or after litigation commences, it follows that insurers must diligently investigate until they reasonably deny or otherwise determine the claim, whether or not that continues into litigation.

Indeed, Utah's UIM statute contemplates an insurer investigating the claim after litigation commences. The statute requires a carrier to "provide a written response" and "tender the amount, if any, of the underinsured motorist carrier's determination of the amount owed to the covered person" within "a reasonable time, not to exceed 60 days[,]" *after* receiving "a notice of filing litigation and the demand for payment of underinsured motorist benefits."[65] This statute, though it does not say it directly, contemplates the insurer at least partially investigating the claim within a "reasonable time" *after* the beginning of litigation. After all, it is common sense that the written response must at least partially investigate and analyze the claim to properly "respond" to the demand for payment. Otherwise, the insurer would not need a "reasonable time" if the response required no actual investigation or effort on the insurer's part. And requiring a written response would have no teeth if the insurer could respond by saying anything at all, such as simply stating that they received the demand.[66]

This also aligns with holdings from previous cases in this court. In *Hoopes v. Owners Insurance Company*, the court, canvassing the case law,[67] held that "when considering a claim

---

[64] *Id* at 533–34 (emphasis added).

[65] Utah Code § 31A-22-305.3(9)(c)(i).

[66] The court notes that Mr. Neese seems to contend at times that the UIM statute requires an insurer to complete their investigation and make a final determination in the written response within 60 days. Pl.'s MSJ 30. But no Utah courts have stated that is the case, nor is it obvious from the text of the statute.

[67] *See supra* n.63–66.

11

for breach of the covenant of good faith and fair dealing in the insurance context, the relevant endpoint for discovery is typically the date of the *denial* of an insurance claim."[68] And thus, when the defendant never formally denied plaintiff's claim, "the court concludes that the endpoint for discovery has never been triggered and that Plaintiff is entitled to conduct discovery into Defendant's actions *after* the filing of the complaint."[69] While *Hoopes* considered a discovery dispute, the court only allowed discovery into post-litigation activity because the post-litigation activity was relevant to whether the insurer breached the implied covenant. The same is true here—where the insurer has not denied the claim, the relevant evidence continues even after litigation commenced.

Neither do Owners' cited cases change the analysis. In *Shotts v. GEICO Gen. Ins. Co.*, the Tenth Circuit applied Oklahoma law, not Utah law as applicable here.[70] Further, the court considered whether the insurer performed an inadequate investigation *before* it made its decision, not whether the insurer took too long to investigate and decide the claim.[71] While *Shotts* held that "[e]vidence of inadequate investigation must suggest a sham defense or an intentional disregard of uncontrovertible facts[,]" here, Mr. Neese alleges a lack of diligence, not an inadequate investigation.[72]

Owners' reliance on *Timberlake Const. Co. v. U.S. Fidelity and Guar. Co.*, is also misplaced. While *Timberlake* held that litigation misconduct was not admissible as evidence of bad faith in an insurance contract, the court applied Oklahoma law and the insurer paid the claim

---

[68] *Hoopes v. Owners Ins. Co.*, No. 2:15-cv-00734, 2018 WL 3320799 at *2 (D. Utah July 5, 2018).
[69] *Id.* (emphasis added).
[70] *Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1315 (10th Cir. 2019).
[71] *Id.*
[72] *Id.* at 1317 (internal citations omitted).

12

before the litigation misconduct took place.[73] Thus, because Oklahoma law focused on "the insurer's knowledge and belief during the time the claim is being reviewed," the relevance of litigation conduct after the claim had already been paid "is severely diminished."[74] But here, the insurer did not deny the claim until well into the litigation process, extending the relevant conduct to actions taken during the litigation. In any event, the evidence *Timberlake* found to be wrongly admitted was "conduct of [the insurer's] counsel"—specifically, a letter from counsel, a counterclaim, and a motion.[75] It was these litigation actions that were ruled inadmissible, not all evidence of any kind relevant to the bad faith inquiry that occurred after suit was filed.

Lastly, Owners' citation to *Cunningham v. Travelers Home & Marine Ins. Co.*, also does not support their position.[76] There, the court was applying Colorado's suspension rule, which "states that 'an insurer's derivative duty to negotiate, settle, or pay an insured's claim is suspended when two elements are present: (1) an adversarial proceeding is filed, and (2) a genuine disagreement as to the amount of compensable damages exists.'"[77] Owners fails to show that Utah has a similar rule.

In the case at hand, Owners denied Mr. Neese's claim on November 19, 2025.[78] Therefore, the court considers all the evidence up to that date, including any relevant post-litigation evidence, to determine whether Owners met its duties.[79]

---

[73] *Timberlake Const. Co. v. U.S. Fidelity and Guar. Co.*, 71 F.3d 335, 339–340 (10th Cir. 1995).
[74] *Id.* at 340.
[75] *Id.* at 339–340.
[76] *Cunningham v. Travelers Home & Marine Ins. Co*, 791 F. Supp. 3d 1263 (D. Colo. 2025).
[77] *Id.*
[78] Def.'s Opp. to Pl.'s MSJ 19 ("Owners has not finished evaluating Plaintiff's claim and has not denied any coverage it may owe.").
[79] To be clear, the court need not and does not decide Plaintiff's additional argument that Owners' litigation conduct itself should be considered. Instead, the court decides only that the filing of the Complaint did not establish a cutoff date for evidence relevant to Plaintiff's bad faith claim.

## II.    Rule 56(d) Motion

Next, having determined that the scope includes actions up to the insurer's final determination of benefits, the court turns to whether Mr. Neese had sufficient time to conduct discovery into Owners' denial of his claims. Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."[80] "The central tenet of Rule 56[(d)] is that 'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'"[81] "Requests for further discovery should ordinarily be treated liberally."[82]

"But relief under Rule 56(d) is not automatic."[83] "[T]he movant must submit an affidavit (1) identifying the probable facts that are unavailable, (2) stating why these facts cannot be presented without additional time, (3) identifying past steps to obtain evidence of these facts, and (4) stating how additional time would allow for rebuttal of the adversary's argument for summary judgment."[84]

Here, where Owners denied Mr. Neese's claim a mere 20 days before Mr. Neese's deadline to file his response to Owners' Motion for Partial Summary Judgment, Rule 56(d) relief

---

[80] Fed. R. Civ. P. 56(d).
[81] *Burke v. Utah Transit Auth. & Loc. 382*, 462 F.3d 1253, 1264 (10th Cir. 2006) (quoting *Price ex rel. Price v. W. Res., Inc.,* 232 F.3d 779, 783 (10th Cir. 2000)).
[82] *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017).
[83] *Burke*, 462 F.3d at 1264.
[84] *Cerveny*, 855 F.3d at 1110 (citing *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd*., 616 F.3d 1086, 1096 (10th Cir. 2010)).

is proper. It is impossible for Mr. Neese to have conducted discovery into Owners' denial in such a short time frame. Mr. Neese also identifies potential inconsistencies in Owners' conduct that bear on its entitlement to summary judgment—for example, Owners' decision to delay resolving his claim on the ground that it needed additional information, yet now formally denying the claim despite still lacking all of his medical records. Mr. Neese explained that he plans to seek discovery into Owners' final decision, asking, for example, questions such as:

> • which of Ken's injuries, if any, Owners attributed to the accident;
> • which of Ken's surgeries and other treatments, if any, Owners attributed to the accident;
> • what Owners' retained experts said about whether the accident caused Ken's injuries (experts that the adjuster testified she would rely on); and
> • the weight that the adjuster gave to the experts retained by Owners compared to the weight she gave to Ken's retained experts.[85]

And even beyond the rule 56(d) arguments, Owners filed its motion for partial summary judgment before it made a final decision on Mr. Neese's claim. It is impossible for the court to hold that Owners was diligent and prompt in its investigation when the investigation was not even completed yet.

In sum, when the relevant timeframe continues up until the denial of the claim, Mr. Neese deserves more than 20 days to conduct discovery into that denial.[86] Owners' Motion for Partial Summary Judgment is denied at this time.

---

[85] Pl.'s 56(d) Mot. 5.

[86] In giving Mr. Neese more time to conduct discovery, the court is not holding that the scheduling order should be amended to extend fact discovery. Owners denied Mr. Neese's claim on November 19, 2025 and fact discovery does not close until March 18, 2026. Fourth Scheduling Order, ECF No. 79, filed November 20, 2025. Five months is significantly longer than 20 days. In fact, given the age of this case and the multiple extensions already granted, the parties should not assume that future extensions of discovery will be granted.

III.    **Diligent Investigation, Fair Evaluation, Prompt Action**

The court now turns to Mr. Neese's Motion for Partial Summary Judgment and whether Owners conducted a diligent investigation and made a prompt decision.[87] "[T]he overriding requirement imposed by the implied covenant is that insurers act reasonably, as an objective matter, in dealing with their insureds."[88] This requires, "at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim."[89]

Mr. Neese asserts that no reasonable jury could find that Owners conducted a diligent investigation or issued a prompt decision. Mr. Neese points to many delays in Owners' investigation, primarily that:

(1) Owners waited over thirty days after Mr. Neese provided authorizations for release of health information to send them to Mr. Neese's treatment providers;

(2) Owners waited over five months after the scheduling order was entered to serve its first set of written discovery requests;

(3) Owners waited nearly eight months after discovery began to propose sending out subpoenas to medical providers, even though some of the providers were identified before the litigation;

(4) Owners waited over six weeks after the parties agreed on the subpoenas scope to send the revised subpoenas;

(5) A full year after discovery began, Owners had still not finished collecting Mr. Neese's medical records;

---

[87] The court considers Mr. Neese's motion despite granting additional time for discovery in response to Owners' motion because a lack of diligence can be confirmed before an investigation is complete, but diligence cannot be confirmed until the investigation is complete. An investigation may begin diligently but later become non-diligent if it stalls. On the other hand, an investigation that is initially non-diligent does not become diligent simply because the insurer improves its efforts later. Plus, Owners did not file a 56(d) motion in opposition.

[88] *Billings*, 918 P.2d at 465.

[89] *Jones*, 2012 UT 52, ¶ 7 (quoting *Beck*, 701 P.2d at 801).

16

(6) Owners waited over a year after discovery began to seek records about Mr. Neese's pharmacies;

(7) Owners waited over a year after discovery began to seek records about Mr. Neese's previous insurance claims, even though it identified those previous claims as important a year and half earlier when Mr. Neese first made his UIM claim;

(8) Owners waited over a year to subpoena the Tanner Clinic, despite Mr. Neese identifying the Tanner Clinic as a provider in his initial disclosures; and

(9) Owners waited over a year from the beginning of discovery to seek authorization allowing Owners to obtain Mr. Neese's worker's compensation claim files.

Given these many delays, Mr. Neese argues that no reasonable jury could find that Owners conducted a diligent investigation.

Owners responds that it has been diligent and prompt. Owners asserts that, before litigation began, Mr. Neese sent Owners a demand with extensive yet incomplete documentation, demanding a final decision within an unreasonable 30-day deadline. Owners argues it promptly requested additional information, followed up with clarification, and continued engaging after receiving partial responses. Post-filing, Owners argues it timely submitted the UIM statute-mandated written response and complied with court-ordered discovery timelines.

To begin, a reasonable jury could find Owners' pre-litigation actions reasonably diligent because of the ongoing communication between the parties and the voluminous documentation Owners was given to evaluate within a limited timeframe. As noted earlier, prior to litigation, Mr. Neese sent Owners a demand letter with almost 2,000 pages of supporting documents.[90] The letter demanded that Owners grant the claim within 30 days or Mr. Neese threatened to file

---

[90] Pl.'s MSJ Ex. L; Pl.'s MSJ 13 ¶ 3; Def.'s Opp. to Pl.'s MSJ 2; Def.'s Opp. to Pl.'s MSJ Ex. 46 (stating that the demand letter included "1,695 pages of medical records, and 102 pages of medical billing information, along with a 179 page life care plan.").

suit.[91] Owners responded to Mr. Neese's demand within two days with a request for additional information.[92] When Mr. Neese refused to provide the information, Owners responded within a week further explaining the documents and additional information they needed and why they needed it.[93] After then receiving some of the requested additional information, Owners responded again within a week to follow up on a few deficient documents and requesting that they be corrected.[94] Instead, that same day, Mr. Neese filed suit.[95] Mr. Neese's only argument for delay during this time is that Owners did not seek Mr. Neese's medical records until over 30 days after Mr. Neese provided authorization forms.[96] But a 30-day delay is not unreasonable, especially when there were ongoing communications about other evidence in the case during that time. Overall, the ongoing communication and the voluminous documents to be considered would allow a reasonable jury to conclude that Owners acted with reasonable diligence in the limited time before the litigation commenced.

After the litigation commenced, a jury could also find Owners was reasonably diligent because Owners complied with its statutory requirement to respond in writing within 60 days and then continued its investigation within the discovery timeline agreed to by the parties and ordered by the court.

---

[91] Pl.'s MSJ Ex. L.
[92] Def.'s Opp. to Pl.'s MSJ Ex. 9.
[93] Def.'s Opp. to Pl.'s MSJ Ex. 6.
[94] Def.'s Opp. to Pl.'s MSJ Ex. 47.
[95] Notice of Removal Ex. 2, Summons and Complaint.
[96] Def.'s Opp. to Pl.'s MSJ Ex. 11; Pl.'s MSJ Ex. T.

For starters, the written response shows that Owners conducted at least some investigation during the 60-day period.[97] The response explained Owners' current position on the claim and the various issues it found that required additional investigation, such as:

> - The degree and nature of possible pre-existing upper extremity conditions, including diagnosed carpal tunnel syndrome, in his upper extremities;
>
> - The degree and nature of possible pre-existing lumbar spine conditions, including diagnosed and surgically addressed right L5-S1 issues;
>
> - Prior and subsequent traumatic events involving Mr. Neese, including worker's compensation incidents and claims, as well as other incidents/accidents, that may have resulted in additional injury/pain to Mr. Neese;
>
> - Apparent delayed onset or reporting of medical issues/conditions Mr. Neese now claims to have been caused by the accident;
>
> - Apparent missing pertinent records and additional providers who have not yet been provided, identified, or for which additional clarification is needed; and
>
> - Indications of prior treatment/care for some of the medical conditions claimed by Mr. Neese to have been caused by this accident.[98]

To identify such issues, Owners had to have undertaken at least some investigation. Although Mr. Neese may contend that Owners should have concluded its investigation by that time, a reasonable jury could find that Owners acted with reasonable diligence in conducting its investigation at that point.

And after that point, Owners continued its investigation within the discovery timeline agreed to by the parties and ordered by the court. While the court considers the post-litigation activity, it does not do so in a vacuum. "What is reasonable depends on the context."[99] Here, that

---

[97] Def.'s Opp. to Pl.'s MSJ Ex. 14.

[98] *Id.* at 2–3.

[99] *United States v. R. Enters., Inc.*, 498 U.S. 292 (1991); *see, e.g. Cont'l Imp. Co. v. Stead*, 95 U.S. 161 (1877) ("But what is reasonable and timely warning may depend on many circumstances."); *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230 (10th Cir. 2003) ("what is reasonable . . . depends on the context") (citation modified).

context is the scheduling orders from the court. Indeed, the requirement that an insurer must diligently investigate stems from the requirement that "a party must act consistently 'with the agreed common purpose and the *justified expectations* of the other party . . . .'"[100] At least for purposes of this motion, the fact that the parties agreed to a discovery timeline provides support for the prospect that Owners may have been acting diligently and consistently with the justified expectations of the parties during that time period.

Mr. Neese also stipulated to multiple discovery extensions in this case.[101] Mr. Neese notes those discovery extensions were to his benefit, since they allowed his ongoing treatment to be entered into discovery. It seems unfair to allow Mr. Neese to take discovery extensions for his benefit, while simultaneously holding it against Owners for also taking advantage of the same extensions.

All in all, under Utah law, the court considers all relevant actions taken by the insurer until the claim is denied or otherwise resolved to determine whether the insurer investigated diligently, promptly, and reasonably. But here, where Owners engaged in ongoing communication prior to litigation and adhered to the timeline agreed to by the parties and ordered by the court after litigation commenced, a factfinder could determine that Owners acted

---

[100] *Rawson*, 2001 UT 24, ¶ 44, 20 P.3d 876 (quoting *St. Benedict's Dev. Co.*, 811 P.2d at 200) (emphasis added).
[101] Stipulated Mot. for Am. Scheduling Order, ECF No. 25, filed December 2, 2024; Second Stipulated Mot. for Am. Scheduling Order, ECF No. 38, filed February 27, 2025; Joint and Stipulated Mot. for Second Am. Scheduling Order, ECF No. 44, filed May 20, 2025; Joint and Stipulated Mot. for Third Am. Scheduling Order, ECF No. 50, filed August 5, 2025.

diligently, promptly, and within the reasonably justified expectations of the parties.[102] Thus, there is a genuine question of material fact that prevents summary judgment.[103]

## IV.    Punitive Damages

Owners also moves for summary judgment on Mr. Neese's claim for punitive damages.[104] Mr. Neese conceded that he cannot receive punitive damages on his contract claims.[105] Accordingly, Owners' Motion for Partial Summary Judgment will be granted on this point.

**ORDER**

Plaintiff's Motion for Partial Summary Judgment[106] is DENIED. Plaintiff's Rule 56(d) Motion for Additional Time to Conduct Discovery[107] is GRANTED. Defendant's Motion for Partial Summary Judgment is GRANTED in PART and DENIED in PART.[108] It is granted on the punitive damages claim and denied on all other claims.

Signed February 2, 2026.

BY THE COURT

David Barlow
United States District Judge

---

[102] *Water Pik*, 726 F.3d at 1143 ("A factual issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'") (quoting *Sally Beauty Co*, 304 F.3d at 972).

[103] *See Affliction Holdings*, 935 F.3d at 1114 (citing *Hobbs*, 579 F.3d at 1179) ("A party is entitled to summary judgment if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.")

[104] Def.'s MSJ 38–39.

[105] Pl.'s Opp. to Def.'s MSJ 29.

[106] ECF No. 46.

[107] ECF No. 80.

[108] ECF No. 69.